KIBBY *v.* RHOADS

1. JUDGMENT—DEFAULT JUDGMENT—SETTING ASIDE—DISCRETION.

Setting aside a default judgment is strictly discretionary; the trial court's decision will not be disturbed unless a clear abuse of discretion is shown. (GCR 1963, 528.3).

2. JUDGMENT—DEFAULT JUDGMENT—SETTING ASIDE—INADVERTENCE —COURT RULE.

Denial of motion to set aside a default judgment was not an abuse of discretion where the motion was based on the affidavit of the manager of an adjustment firm employed by the garnishee defendant insurance company claiming inadvertence, mistake or excusable neglect in that the plaintiff's attorney had told him that the suit had been withdrawn and would be filed again, the plaintiff's attorney's affidavit stated that he never said the suit was withdrawn or would be withdrawn, the trial court concluded that there was no logical reason for the suit to have been withdrawn, especially because if the suit had been withdrawn the statute of limitations would have barred refiling, and where the plaintiff's attorney waited three months before taking the default judgment (GCR 1963, 528.3).

3. STIPULATIONS—JUDGMENT DEBTOR—WRITING—OPEN COURT—COURT RULE.

An agreement concerning the proceedings in a cause between one of the parties' attorney and a person obligated to satisfy the judgment in the cause is not binding unless in writing or made in open court (GCR 1963, 507.9).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 47 Am Jur 2d, Judgments § 1158.
Appealability of order setting aside, or refusing to set aside, default judgment. 8 ALR3d 1272.
[2, 4] 46 Am Jur 2d, Judgments §§ 727, 776, 780.
[3] 50 Am Jur, Stipulations § 3.

4. JUDGMENT—DEFAULT JUDGMENT—SETTING ASIDE—INADVERTENCE
—WRITTEN AGREEMENT.

> Denial of a motion to set aside a default judgment was not an
> abuse of discretion where the motion was based on the affidavit
> of the manager of an adjustment firm employed by the gar-
> nishee defendant insurance company claiming inadvertence, mis-
> take, or excusable neglect in that the plaintiff's attorney had
> told him that the suit had been withdrawn and would be filed
> again, and the plaintiff's attorney's affidavits stated that he
> never said the suit was withdrawn or would be withdrawn, be-
> cause a private agreement respecting the proceedings in a
> cause is not binding unless there is either a written or an
> open court agreement (GCR 1963, 507.9, 528.3).

Appeal from Kent, John T. Letts, J. Submitted
Division 3 October 9, 1970, at Grand Rapids. (Dock-
et No. 8807.) Decided December 10, 1970. Leave
to appeal denied March 9, 1971. 384 Mich 814.

Complaint by Maude Kibby against Stanley E.
Rhoads and Carol Rhoads, his wife, for negligence.
Default judgment for plaintiff. Motion of Bankers
& Shippers Insurance Company of New York, in-
surer of defendants and garnishee defendant, to set
aside default judgment denied. Defendant insurer
appeals. Affirmed.

*Benjamin Baum,* for plaintiff.

*Hillman, Baxter & Hammond (William M. Brem-
er,* of counsel), for defendants.

Before: HOLBROOK, P. J., and R. B. BURNS and
J. J. KELLEY, JR.,* JJ.

HOLBROOK, P. J. This is an appeal by defendants
from an order denying their motion to set aside a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

default judgment in favor of plaintiff Maude Kibby in the amount of $15,000 and costs.

The facts are for the most part undisputed except as to what was said in a certain telephone conversation which is included in what we relate as the pertinent facts.

Mrs. Kibby, an elderly lady, 83 years of age, visited a doctor's office located on property owned by defendants Stanley E. Rhoads and Carol Rhoads on the 28th day of January 1966. The doctor was not in and as she left the building and still on defendants' premises she claimed she fell on a walkway that was so slippery that it did not bear her weight and that she suffered serious, permanent injuries including the breaking of her left hip and injuring her nervous system with resulting pain and suffering.

Plaintiff commenced a suit for damages against the defendants on September 6, 1968, based upon the claim that it was the duty of the defendants to provide a safe place for plaintiff and other persons who were on the premises at the invitation of the tenants of defendants, so that they could use it with reasonable safety; that defendants failed to meet their duty in that the walkway was permitted to become and remain icy and too slippery to walk on safely; and that defendants' negligence was the sole cause of plaintiff's fall and resulting injuries and damages.

A summons and a copy of the complaint were personally served on each of the defendants on the 9th day of September, 1968, and returns duly filed with the clerk two days later.

On January 16, 1969, plaintiff's counsel filed a default and an affidavit in support of the default of the defendants for their failure to plead or otherwise defend the action.

On May 23, 1969, after taking the testimony of the plaintiff, Maude Kibby, her son, Gordon Kibby, who on the day in question drove his mother to defendants' building and who had returned to take his mother home, after getting a haircut, and Dr. Eugene Kramer, the attending physician and surgeon, the trial court granted plaintiff a default judgment for $15,000. On October 7, 1969, plaintiff commenced garnishment proceedings, naming Bankers & Shippers Insurance Company of New York as garnishee defendant of the principal defendants.

The insurance company made a disclosure October 23, 1969, admitting that it was the insurer of Stanley E. Rhoads and Carol Rhoads against legal liability in connection with the ownership of the premises (where plaintiff was injured), under Owners, Landlords and Tenants policy No CGA70245B 7609, and further, that at the time of service it was not indebted to defendants in any sum, due or to become due. On the same day counsel for defendants made a motion to set aside the default judgment of May 23, 1969, supported by affidavits of William Speer (manager of Crawford & Company, an adjusting organization, who had been employed by Bankers & Shippers Insurance Company of New York to handle plaintiff's claims against the defendants), Beverlee M. Ainsley, Grand Rapids area manager of Underwriters Adjusting Company, who had been employed by Bankers & Shippers Insurance Company of New York, sometime after February 10, 1969, to supervise the handling of its claims, and Robert N. Hammond, a member of the law firm retained by the insurance company to represent defendants.

On May 28, 1969, plaintiff's counsel filed a motion for entry of judgment against garnishee defendant and the next day filed an affidavit of Benjamin Baum,

attorney for plaintiff, opposing the motion to set aside the default judgment.

The main disagreement between the parties pertains to what was said between Mr. Speer, manager of the adjusting firm employed by the insurance company, and Mr. Baum, the attorney for the plaintiff, occurring on October 1, 1968. Mr. Speer's affidavit set forth in part:

"3. That on October 1, 1968, defendants herein called deponent and for the first time informed him that this suit had been filed against them and that they had been served with summons and complaint, whereupon deponent advised them to immediately forward the said suit papers to him.

"4. That on October 1, 1968, and immediately after being called by defendants herein deponent called plaintiff's attorney, Benjamin Baum, to advise him that notice of suit had just been received and to inquire as to the status of the suit in view of the time which had expired between the date of service of summons and the receipt by deponent of the first notice of suit.

"5. That Attorney Benjamin Baum advised deponent that he, Mr. Baum, had withdrawn the suit when he did not hear from anyone and that he would file it again. Deponent so advised his client by *telephone* on 10/1/68 and on 10/7/68, after receiving the *same,* he forwarded to his client the summonses and complaints, confirmed his prior telephone conversation, and asked for instructions as to defense attorneys to whom to refer the case when it should be refiled." (Emphasis supplied.)

The affidavit of Benjamin Baum relates in part as follows:

"2. That said action was commenced in the Circuit Court for the County of Kent on the 6th day of September, 1968. That copies of the summons and bill of complaint were served on defendants on the

9th day of September, 1968. That subsequent thereto defendants called the affiant on the telephone and informed him that they had received the papers and informed affiant that in view of the fact that they had insurance on the property that they would contact their insurance company. That subsequent thereto on October 7th defendant Stanley E. Rhoads again called affiant and informed him that he sent the papers to his insurance company but that they had been returned and that apparently they had sent them to the wrong insurance company. Affiant then informed Mr. Rhoads that the insurance company was represented by Crawford & Co., adjusters, who had been negotiating with affiant concerning the claim and payment of the medical payments portion of the policy. That defendant Stanley E. Rhoads informed affiant that he would immediately contact Crawford & Co. and that he would turn the papers over to them.

"3. Affiant states further that subsequent thereto he received a telephone call from William Speer, the manager of Crawford & Co. informing affiant that they had received the papers on behalf of the insurance company. Mr. Speer told affiant that inasmuch as the time to answer was late could they have additional time and affiant told him that he would give them a few days additional time to appear but that they should get in their appearance and answer without delay. That said William Speer said they would do so. Affiant states that subsequent thereto he heard nothing further from anybody and he waited until January 13th, 1969, some three (3) months later before entering a default in the above case, that he waited again until the 23rd day of May, 1969, before taking a default judgment against the defendants after presenting testimony in court.

"4. Affiant further states that at no time did he ever state to Mr. Speer or anyone else that he was withdrawing the suit and that he would re-file it later,

and denies any conversation with Mr. Speer that even remotely resembles such language.

"5. Affiant further states that at no time did he ever file any withdrawal or dismissal of the suit or inform anyone that he intended to do so and that there would be no reason or basis for such action on his part to withdraw the suit and then re-file it, especially since he had service on defendants and it was so close to the time that the statutes of limitations would have run. Affiant further states that any examination or call to the clerk's office would have informed any person that no such withdrawal was made or attempted. Furthermore, if a new suit was expected to be re-filed and it was not done so, then defendant insurance company should have realized that there was something wrong with their interpretation and have inquired concerning the status of the case. This inquiry of course would have produced immediate knowledge that their assumption was not correct."

From the affidavits above recited it appears that the manager of the insurance adjusting firm and the plaintiff's attorney have definite conflicting understandings of what was said in the telephone conversation in question. However, Mr. Speer said that he *telephoned* the home office of the insurance company the same day of the telephone conversation with Mr. Baum and informed them of the telephone conversation. He said he called Mr. Baum concerning the status of the suit in view of the time between the service and notice to deponent of the suit. Mr. Speer then sent the summons and complaints to the home office of the insurance company at New York on October 7, 1968. We do not have the insurance company through counsel or otherwise requesting or attempting to obtain a copy of the *"dismissal"* or "withdrawal" of the suit. It was deemed important to Mr. Speer to send the summons and complaints

to the home office of the insurance company—but not necessary for him to obtain the "dismissal" of the same.

It appears to this Court that once a lawsuit has been filed and service had upon the defendants in the suit, and defendants' insurance company notified of such service through their local agent, the general manager of an adjusting insurance firm, that communications concerning the status of the lawsuit with plaintiff's attorney is a privilege and responsibility of an attorney-at-law and not of a layman such as Mr. Speer even though he may be a highly qualified adjuster. What happened in this case is one of the reasons why the practice of law is limited to qualified attorneys. We point out that Mr. Speer called his home office a few minutes after he talked with Mr. Baum. He *could have called* the home office a few minutes before making any other calls and informed it of the suit and asked for instructions as to what law firm to refer the matter. He says that he wrote to the home office on October 7, 1968, and enclosed the summons and complaints and stated that the *suit would be commenced again* and asked to what law firm should he refer the matter *at that time?* We assume the home office of the insurance company had a legal department staffed with attorneys to whom *all* lawsuits commenced against its insureds were referred. If it had been so referred, it is obvious that garnishee defendant would have checked as to a dismissal.

The trial judge in his ruling denying defendants' motion to set aside the default judgment stated in part:

"The allegation made by the above-named deponent [William Speer] seems rather inconceivable when one realizes that the statute of limitation [*sic*] would have run as of January 28, 1969, and thus bar

the starting of a new suit after that date. There is also the unanswered question of why an experienced attorney would run the risk of having the statute of limitations run on his client by withdrawing a suit which on its face there appears to be no error in pleading and to which other defendants could have been joined by amendment to such pleadings. The statement made by the above deponent is found to be in derogation of any logical conclusion if there be truth in the statement as made. But in any event the defendants should have requested something more tangible, *i.e.* a writing, rather than to accept an oral statement which they allege 'lulled them into lethargy.'

"The defendants petitioners cannot be heard to say at this time that they did not have sufficient time in which to have investigated the status of the case in view of the fact that the plaintiff waited from October 1st, 1968, to January of 1969, before requesting a default, and from January 1969 to September 1969, before an order had been entered. It should be further noted that on May 23, 1969, the plaintiff and certain other witnesses appeared in this court, the testimony was taken in preparation for a default judgment, and a record made. The court at that time carefully observed the plaintiff who testified under oath that she was 86 years of age. The findings of this court are not based upon the age or physical or mental condition of the plaintiff because the court does not feel that such matters should be given any weight in arriving at a decision."

We agree with the findings of the trial judge. The insurer is the only one at fault in this case, the insurer is the only one that is required to pay the judgment. The principal defendants are not complaining that they are required to pay any excess over the coverage provided by the insurer, nor that they have been personally harmed by the suit. No

affidavits of the principal defendants were filed with the motion to set aside the default judgment.

The motion to set aside default judgment was based upon the claimed facts that the default in filing responsive pleadings occurred as a result of mistake, inadvertence or excusable neglect and that there is a meritorious defense to the claims of plaintiff. Such a claim of meritorious defense is contested by the plaintiff, because the dates of the photographs of the premises relied upon by defendants' counsel in his affidavit were not stated nor were the photographs attached to the affidavits. No affidavit of anyone in the home office of the insurer in New York was filed in support of the motion showing the mistake upon which it claims relief and explaining why it relied upon the hearsay statement that the suit had been withdrawn. The only affidavit showing a meritorious defense was made by the attorney for defendants and was either based upon information and belief or stated conclusions, not facts showing a meritorious defense. *Hartman* v. *Roberts-Walby Enterprises, Incorporated* (1969), 17 Mich App 724.

Defendants raise two issues on appeal which we join together and restate as follows:

Whether under the facts in this case the trial court abused its discretion in failing to set aside the default judgment?

Defendants assert that the default judgment should be set aside pursuant to GCR 1963, 528.3 because of mistake, inadvertence or excusable neglect. These grounds are set forth in GCR 1963, 528.3 (1):

".3 Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud; *etc.* On motion and upon such terms as are just, the court may re-

lieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect;   *   *   *   ."

Counsel for appellants state in their brief that "[t]he Michigan cases decided to date under GCR 1963, 528.3 have indicated: 'The trend of our jurisprudence is toward meritorious determination of issues' ". *Walters* v. *Arenac Circuit Judge* (1966), 377 Mich 37, 47. *Walters, supra,* had to do with the setting aside of a default before judgment. The defendant was a medical doctor and when he was served he gave the summons to his insurer to defend. The insurer *misfiled* the summons but was informed by an attorney of the default taken against the doctor when it appeared in a printed calendar for a regular term of court. There, by a five to three vote, the Supreme Court affirmed the trial court's order setting aside the default and permitting the doctor to have his day in court. The doctor complained because he could not defend the suit due to the negligence of his insurer. The Court also noted that the insurer might have to pay part or all of any judgment rendered against the doctor. By the same token the doctor may have had to pay a part of the judgment himself, if it exceeded the limit of coverage as provided in the insurance policy. In *Walters, supra,* p 47, it is also stated as follows:

"We conclude that the circuit court did not abuse its discretion in setting aside the default. We approved in *Crew* v. *Zabowsky* [1959], 357 Mich 606, 610, the language in *Kirn* v. *Ioor* [1934], 266 Mich 335, 338:

" 'It is long-settled textbook law, sustained by abundant decisions in this Court and elsewhere that, in cases within jurisdiction of the trial court, its ruling on application for an order setting aside a

judgment or decree is strictly discretionary and will not be disturbed by an appellate court, unless a clear instance of abuse of discretion is shown.' "

Defendants' counsel cite several cases which we will discuss. In *McDonough* v. *General Motors Corporation* (1967), 6 Mich App 239, plaintiff sought damages against defendants General Motors Corporation and Unit Crane in an action brought under the wrongful death act. Plaintiff took a default judgment against Unit Crane when it failed to answer. Unit Crane's insurer had misfiled the pleadings, and upon learning of the default judgment, sought to set it aside under GCR 1963, 528.3. It was shown that Unit Crane was not the manufacturer of the "stiffleg derrick" which was the subject of the suit. The case of *White* v. *Sadler* (1957), 350 Mich 511, is authority for the position of the plaintiff concerning strictness regarding setting aside of defaults by the courts.

In *McDonough, supra,* the Court ordered the default judgment set aside because it would be unconscionable to let it stand and it was fraught with manifest injustice.

In the case of *Wendel* v. *Swanberg* (1969), 17 Mich App 235, we reversed the trial court, which had refused to set aside the default judgment because of the delay of over one year after personal service was made and nine months after the date of the entry of the default judgment before the motion to set aside the default judgment was filed. There, the trial court properly ruled that defendant had shown good cause under GCR 1963, 528.3 to set aside the default judgment but ruled the motion was not made within a reasonable time; our Court ruled that because it was made within three months from the time defendant was advised of the default judgment it was filed within a reasonable time. This case is

now before the Supreme Court for review by leave to appeal granted, dated December 24, 1969 (383 Mich 755).

In *Bednarsh* v. *Winshall* (1961), 364 Mich 113, the trial court denied a motion by defendant to set aside a default judgment for $11,385, based on a claim for money due in assumpsit. The motion was timely, having been filed only three days after the judgment was filed, and the motion was supported by an affidavit of merits alleging payment, with cancelled checks attached as supporting evidence. The Supreme Court reversed, holding the denial of the motion to set aside default judgment was an abuse of discretion.

None of these cases is parallel or analogous to the facts in the instant case. Counsel for defendants in oral argument before the court on the hearing on the motion to set aside the default judgment stated:

"Instead of Mr. Baum calling the company before taking a default judgment when he knew something was wrong, and saying: 'I thought you were going to plead. There is an insurance company. Who are your attorneys?' He took a default judgment. That, we believe, justifies in this case that the matter be tried upon the merits."

*Arguendo,* putting the shoe on the other foot, and assuming as defendants would have us assume that the insurer thought the suit had been withdrawn and would be started again, that the statute of limitations would soon run against the action on January 28, 1969, that the defendant insurer believed that something was wrong because the suit had not been started again, and that plaintiff was about to lose her chance to have the case decided on its merits—we could pose the same question to insurer: why didn't you call Mr. Baum and say—"aren't you going to start that suit again—the statute of limitations is

about to run against your client's claim"? No, the insurer did not do this—anymore than did the plaintiff's attorney call up the insurer and ask it to appear and contest the case. Is the duty of the one greater than the other? We think not. Insurance companies are an important part of our way of life— they serve a necessary, noble and important purpose, but they are not infallible, nor are they exempt from obeying the General Court Rules of our State. It is counsel's theory that all insurance companies always contest a case and so all plaintiffs' attorneys, where there is insurance involved, must at their peril proceed to a default judgment—subject to having the judgment set aside if the insurance company asks for it. This may be true where there is excusable neglect but otherwise not.

The instant case is similar to our recent case of *Freeman* v. *Remley* (1970), 23 Mich App 441, where we affirmed the trial court's ruling denying a motion to set aside default judgment.

Another reason for affirmance appears in GCR 1963, 507.9:

".9 Agreements to be in Writing. No private agreement or consent between the parties to a cause, or their attorneys respecting the proceedings in a cause which is denied by either party, is binding, unless the same has been made in open court, or unless evidence thereof is in writing subscribed by the party or his attorney against whom the same is alleged."

If such disputed verbal agreements are denied effect when made between parties and attorneys, they should likewise not be binding if made between attorneys and persons who are obligated to satisfy a judgment rendered in the cause.

Affirmed. Costs to plaintiff.

All concurred.